**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **ROSS BROWN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.: 4:21-cv-270-SDJ-KPJ** |
| | § | |
| **DOLGENCORP OF TEXAS, INC.** | § | |
| **dba DOLLAR GENERAL,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant Dolgencorp of Texas, Inc. dba Dollar General's ("Defendant") Motion for Summary Judgment (the "Motion") (Dkt. 22), to which Plaintiff Ross Brown ("Plaintiff") filed a response (Dkt. 23) and Defendant filed a reply (Dkt. 24). Having considered the briefing, the evidence, and the applicable authorities, the Court recommends Defendant's Motion (Dkt. 22) be **GRANTED**.

## I.    BACKGROUND

### A.  Relevant Facts[1]

On February 26, 2019, Plaintiff slipped and fell on a walkway (the "Walkway") located outside a Dollar General store in Sherman, Texas (the "Dollar General"). *See* Dkt. 24 at 23; Dkt. 4 at 2. The Walkway is a blue ramp located between the entrance to the Dollar General and its parking lot. *See* Dkt. 23-1 at 8; Dkt. 23-2; Dkt. 23-3. As depicted in the photograph below, the Walkway is centered in front of the store entrance and provides an avenue of ingress and egress between the Dollar General and its parking lot. *See* Dkt. 23-2; Dkt. 23-3.

---

[1] Except as otherwise stated, the following facts are undisputed.

1



Dkt. 23-2.

The Walkway was painted one to two weeks before Plaintiff's fall, *see* Dkt. 22-1 at 3–4, with what Plaintiff describes as "slippery paint." *See id.* at 3. Plaintiff testified he fell "mid-morning," after 9:30 a.m., during Dollar General's business hours. *See* Dkt. 24 at 23. Plaintiff testified the Walkway was wet with "clear dew water" and that there was "probably" a "light rain" the night before. *See id.* at 26. Plaintiff testified he did not use his windshield wipers when driving to Dollar General the morning that he fell. *See id.*

Defendant operates the Dollar General out of a building leased to it by non-party Sherman Investments of WA LLC (the "Landlord"). *See* Dkt. 22-1. Defendant admits it leased and occupied the building at all times relevant to this litigation, as evidenced by a lease agreement entered on June 5, 2006, between Defendant and non-party M & D Interests, Inc., and assigned to the Landlord on October 19, 2010 (the "Lease"). *See* Dkt. 22-1 at 3. Defendant asserts, however, that

the Walkway was "solely owned, possessed, controlled, and maintained by [the Landlord]." *See id.* The Lease, in relevant part, provides as follows:

> [The Landlord] shall maintain at its cost and expense in good condition and shall perform all necessary maintenance, repair, and replacement to the exterior of the Demised Premises including, but not limited to, the roof, all paved and grass or landscaped areas, foundation, floors, walls, all interior and exterior utility lines and pipes, and all other structural portions of the building during the term of this Lease and any renewal periods. . . . [Defendant] shall maintain the interior of the premises during the term of this Lease and any renewal periods . . . .

*See* Dkt. 22-1 at 10–11. According to Justin Comer, a claims manager in Defendant's Risk Management Division, the Walkway was painted by or at the Landlord's direction. *See* Dkt. 22-1 at 3–4. After Plaintiff's fall, the Landlord repainted the Walkway. *See* Dkt. 23-1 at 18.

Thornton Thomas ("Mr. Thomas") managed the Dollar General on the date of Plaintiff's fall. *See* Dkt. 23-1 at 7. After Plaintiff's fall, Mr. Thomas directed his employees to place a mat on the Walkway to create "[m]ore traction." *See id.* at 10–11.

Mr. Thomas testified regarding Defendant's use of the outdoor premises. According to Mr. Thomas, Defendant used the paved area between the store entrance and the parking lot to display "merchandise that was actively for sale," including a Redbox, ReddyIce machine, AmeriGas propane tanks, swimming pools, chairs, stools, and dog food. *See id.* at 8–9, 12–13. Mr. Thomas testified he never sought permission from the Landlord to display merchandise outside the store. *See id.* at 15–16. Mr. Thomas further testified that Dollar General employees swept the parking lot and sidewalk "every morning" that "it was not raining." *See id.* at 14.

## B. Procedural History

Plaintiff filed an Original Petition against Defendant on February 12, 2021, seeking to recover under a theory of premises liability. *See* Dkt. 4. In the Original Petition, Plaintiff contends "Defendant's agents, servants, and employees negligently created a dangerous condition by

applying slippery paint to an exterior surface [the Walkway], negligently or willfully allowed such condition to continue and/or negligently or willfully failed to warn Plaintiff of the condition." *See id.* at 3.

Defendant removed this action on April 2, 2021, and the parties subsequently engaged in discovery. *See* Dkts. 1, 11, 13, 17, 19, 20. The parties participated in mediation on November 10, 2021; the mediation conference was suspended by agreement of the parties. *See* Dkt. 21. On December 29, 2021, Defendant filed the Motion. *See* Dkt. 22. Plaintiff then filed a response (Dkt. 23) and Defendant filed a reply (Dkt. 24). The Motion is ripe for adjudication.

## II.    LEGAL STANDARD

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

In response, the nonmovant "may not rest upon mere allegations contained in the pleadings but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show there is a genuine issue for trial. *Stults*, 76 F.3d at 656. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. LOCAL R. CV-56(d). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Evans v. Tex. Dep't of Transp.*, 547 F. Supp. 2d 626, 636 (E.D. Tex. 2007) (citing *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322), *aff'd*, 273 F. App'x 391 (5th Cir. 2008). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23.

### III.    ANALYSIS

Defendant argues summary judgment is appropriate for four alternate reasons: (1) under the Lease, Defendant did not have a contractual right to occupy or control the Walkway and, therefore, did not owe a duty to warn or make the Walkway safe; (2) Defendant did not paint the

Walkway or cause it to be painted and, therefore, did not cause the allegedly dangerous condition; (3) the Walkway was not a concealed hazard because it was open and obvious, which negates any duty to warn or make safe; and (4) there is no evidence Defendant had actual or constructive knowledge of the allegedly dangerous condition so as to trigger Defendant's duty to warn or make safe. *See* Dkts. 22, 24.

The Court considers Defendant's first argument only. The Court need not consider Defendant's second argument because Plaintiff agrees Defendant did not cause the dangerous condition. *See* Dkt. 23 at 2. As set forth in Plaintiff's response to the Motion:

> Defendant's second issue concerns who caused the condition. . . . Plaintiff's petition was obviously filed before any discovery had been completed, and so Plaintiff could not know that another entity contracted to have the area painted. Defendant is covering its bases; however, Plaintiff would not attempt to make such an argument after seeing evidence to the contrary. Control of the area is the sole determination before the Court.

*See id.* The Court need not consider Defendant's third and fourth arguments because they were raised for the first time in Defendant's reply brief and are, therefore, not properly before the Court. *See Dugger v. Stephen F. Austin State Univ.*, 232 F. Supp. 3d 938, 957 (E.D. Tex. 2017) (arguments raised for the first time in a reply brief are waived). Because Defendant's first argument is dispositive, the Court recommends the District Judge grant summary judgment in favor of Defendant.

### A. Premises Liability Standard

To prevail on a premises liability claim, the plaintiff must show the defendant owed a duty to maintain the premises in a safe condition. *See United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471, 473 (Tex. 2017). Under Texas law, occupiers of land have a duty to make safe or to warn

invitees[2] of concealed, unreasonably dangerous conditions on the property of which the occupier is, or reasonably should be, aware but the invitee is not. *Id.* at 474 (citing *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015)). This duty generally does not extend to adjacent property. *Holland v. Mem'l Hermann Health Sys.*, 570 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (citing *Hirabayashi v. N. Main Bar-B-Q, Inc.*, 977 S.W.2d 704, 706–07 (Tex. App.—Fort Worth 1998, pet. denied)). However, there are exceptions to this general rule. *See id.* Relevant here, a lessee has a duty to reasonably maintain adjacent, unleased property that it "actually controls," *Wal-Mart Stores v. Alexander*, 868 S.W.2d 322, 324 (Tex. 1993), or that it has a right to control, whether that right is expressed in contract or implied by conduct. *United Scaffolding, Inc.*, 537 S.W.3d at 473. Control may be established by the defendant's ownership, occupation, or control of the premises where the injury occurred. *See id.*; *Wilson v. Tex. Parks & Wildlife Dep't*, 8 S.W.3d 634, 635 (Tex. 1999); *Holland*, 570 S.W.3d at 897.

Importantly, however, Texas courts have limited this duty to instances where the lessee's control of the adjacent property "relate[s] to the condition or activity that caused the injury." *Cohen v. Landry's Inc.*, 442 S.W.3d 818, 824 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). For example, in another case against Defendant, the Texas Court of Appeals held the duty did not apply because the injury sustained by the plaintiff did not relate to Defendant's use and occupation (i.e. control) of the adjacent property. In that case, the plaintiff was injured in an alleyway behind a Dollar General store when he stepped out of a truck and onto a concrete block that had been placed in a hole in the ground. *See Midkiff v. Hancock E. Tex. Sanitation, Inc.*, No. 09-97-351, 1999 WL 1044353, at *1 (Tex. App.—Beaumont Nov. 18, 1999, no pet.). Defendant did not lease

---

[2] In Texas, the duty imposed on owners and occupiers of land depends on the plaintiff's status at the time of injury as an invitee, a licensee, or a trespasser on the premises. *United Scaffolding, Inc.*, 537 S.W.3d at 474. In this case, the parties agree Plaintiff was an invitee of Dollar General when he fell on the Walkway. *See* Dkt. 4 at 2; Dkt. 22 at 8.

the alleyway, *see id.* at *5–6, but used the alleyway to take out its trash. *See id.* at *7. The Court of Appeals upheld summary judgment in favor of Defendant because the plaintiff failed to provide summary judgment evidence indicating Defendant "took actual control over any physical alterations, maintenance, or repairs of the portion of the alleyway where [the plaintiff] sustained his injuries." *See id.* By contrast, Texas courts have found the duty applies where the defendant failed to maintain its own improvements on the unleased premises. *See Walmart*, 868 S.W.2d at 325 (Walmart had a duty of reasonable care to maintain the safety of a ramp that it built on property adjacent to its leased premises). In other instances, Texas courts have found the duty applies where the defendant sought to repair a dangerous condition located on adjacent property. *See Cohen*, 442 S.W.3d at 824–25 (finding a fact issue as to duty based on evidence that the defendant solicited a bid and possibly undertook to repair an unlevel sidewalk on adjacent property, which caused the plaintiff's injury).

Hence, to survive summary judgment, Plaintiff must put forth evidence showing that Defendant owed a duty to maintain the Walkway. Because the Walkway was not within the scope of the Lease, to establish a duty existed, Plaintiff must put forth evidence that Defendant had actual control of, or a right to control, the Walkway and, further, that such control related to Plaintiff's injury.

### B. Defendant's Control of the Walkway

Plaintiff contends Defendant "routinely exercised control" of the outdoor premises, generally. *See* Dkt. 23 at 1. To support his position, Plaintiff provided evidence that Defendant "placed merchandise outside the store for shoppers to examine and purchase."[3] *See* Dkt. 23.

---

[3] Defendant argues the Court may not consider Exhibits B, C, and D (Dkts. 23-2, 23-3, and 23-4, respectively) attached to Plaintiff's response. *See* Dkt. 24 at 2–4. As explained herein, Plaintiff's evidence—even if considered by the Court—is not enough to survive summary judgment. Defendant's objections to Plaintiff's evidence are thus overruled as moot.

Plaintiff's Exhibit B depicts a ReddyIce machine, a Redbox, AmeriGas propane tanks, and plastic swimming pools displayed on the paved outdoor area between the store entrance and the Walkway. *See* Dkt. 23-2. Mr. Thomas testified that the ReddyIce machine housed merchandise for Dollar General, the AmeriGas propane tanks and swimming pools were store merchandise, and the Redbox was maintained by Dollar General. *See* Dkt. 23-1 at 8–9. Plaintiff's Exhibit C depicts swimming pools, chairs, and stools displayed on the same outdoor area. *See* Dkt. 23-3. Mr. Thomas testified these items were store merchandise. *See* Dkt. 23-1 at 12. When asked why Defendant "stor[ed] merchandise outside of the store," Mr. Thomas responded, "That is where we would bring in [sic] out during the day and bring it in at night." *See id.* at 12–13. Mr. Thomas testified he was not required to contact the Landlord for permission to display store merchandise outside of the store. *See id.* at 15–16. Plaintiff also provided evidence that Defendant contributed to maintaining the store parking lot and "sidewalk": Mr. Thomas testified the "sidewalk" and the "parking lot [were] normally swept every morning" by Dollar General employees provided "it was not raining." *See id.* at 14. But this evidence goes to whether Defendant controlled the outdoor areas adjacent to the Walkway—not the Walkway itself.

Even assuming such evidence shows Defendant controlled the outdoor areas adjacent to the Walkway, it does not show that Defendant controlled the Walkway. And the Court cannot assume, based on the foregoing evidence, that Defendant controlled the Walkway. *Cf. Midkiff*, 1999 WL 1044353, at *7 (upholding summary judgment in favor of Defendant where the plaintiff failed to show Defendant controlled the "portion" of the unleased premises where the plaintiff was injured). The only evidence tending to show Defendant controlled the Walkway is Mr. Thomas's testimony that, after Plaintiff's fall, Defendant placed a floor mat on the Walkway to create "[m]ore traction." *See id.* at 11, 18.

This evidence does not satisfy Plaintiff's summary judgment burden for two reasons. First, the evidence that Defendant placed a mat on the Walkway after Plaintiff's fall is insufficient to create a fact issue as to whether Defendant controlled the Walkway. As explained above, courts have considered subsequent remedial measures as evidence of control in cases where the defendant undertook to repair the dangerous condition, rather than temporarily mitigating the harm it posed. *See Cohen*, 442 S.W.3d at 824–25 (relying on evidence the defendant received an invoice to actually repair the dangerous condition of the adjacent sidewalk); *see also Strandberg v. Spectrum Off. Bldg.*, 293 S.W.3d 736, 741 (Tex. App.—San Antonio 2009, no pet.) ("Spectrum add[ing] anti-skid strips after pedestrians had slipped on the wet walkway supports not only Spectrum's control and possession . . . ."); *City of Hidalgo v. Hodge*, No. 13-16-695, 2018 WL 460808, at *2 (Tex. App.—Corpus Christi–Edinburg Jan. 18, 2018, pet. denied) (mem. op.) (finding control based, in part, on evidence the defendant repaired the dangerous condition after the plaintiff's injury). In this case, the summary judgment evidence indicates the mat on the Walkway was in place for no more than two days. *Compare* Dkt. 23-1 at 11, 18 (Mr. Thomas's testimony that, after Plaintiff's fall, Defendant placed a mat on the Walkway) *with* Dkt. 23-3 (photograph taken two days after Plaintiff's fall, which depicts a darkened area on the Walkway that Mr. Thomas testified indicates where the mat was previously placed, *see* Dkt. 23-1 at 11–12). The evidence also indicates the Walkway's dangerous condition was remedied by the Landlord—not Defendant—when the Landlord repainted the Walkway. *See* Dkt. 23-1 at 18 ("Q: Okay. Other than placing the mat in the ramp area, was anything else done to the ramp to make it, you know, less slick? [Mr. Thomas]: It was repainted again by the Landlord."). Defendant's temporary placement of the mat on the Walkway falls short of the more permanent remedial measures that courts have considered

to be evidence of control. *See Cohen*, 442 S.W.3d at 824–25; *Strandberg*, 293 S.W.3d at 741; *Hodge*, 2018 WL 460808, at *2.

Second, the evidence fails to show that Defendant's alleged control of the outdoor premises, generally, or the Walkway, specifically, was related to Plaintiff's injury or the alleged dangerous condition of the Walkway. *See Cohen*, 442 S.W. 3d at 824 ("The Control must relate to the condition or activity that caused the injury."). Plaintiff alleges he slipped on the Walkway because it was painted using "slippery paint." *See* Dkt. 4 at 3; Dkt. 22-1 at 3–4. But Plaintiff has not shown that Defendant's display of merchandise or near-daily sweeping of the parking lot bore any relation to Plaintiff's fall or the Walkway's allegedly slippery condition. Indeed, the only evidence that relates to the Walkway's dangerous condition is evidence showing the Landlord had a contractual responsibility to maintain the Walkway, *see* Dkt. 22-1 at 10 ("Lessor shall maintain . . . in good condition and shall perform all necessary maintenance, repair, and replacement to the exterior of the Demised Premises including . . . all paved and grass or landscaped areas . . . ."), and evidence showing the Landlord painted the Walkway with the alleged slippery paint and subsequently repaired the condition by repainting the Walkway, *see, e.g.*, Dkt. 22-1 at 3–4; Dkt. 23-1 at 18. The Court cannot find, based on the record, that Defendant's alleged control of the outdoor premises was related to Plaintiff's injury or the alleged dangerous condition of the Walkway. *See Midkiff*, 1999 WL 1044353, at *7 (upholding summary judgment in favor of Defendant where the plaintiff presented evidence Defendant utilized the adjacent area but did not present evidence Defendant "took actual control over any physical alterations, maintenance, or repairs" of the "*portion of the [adjacent area] where [the plaintiff] sustained his injuries*" (emphasis added)).

Because Plaintiff has not put forth sufficient evidence to raise a genuine dispute as to whether Defendant controlled the Walkway, as required to show Defendant owed Plaintiff a legal duty, the Court finds summary judgment should be granted.

## IV.    RECOMMENDATION

For the foregoing reasons, the Court recommends the Motion (Dkt. 22) be **GRANTED** and Plaintiff's claims against Defendant be **DISMISSED.**

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 16th day of June, 2022.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE